United States Court of Appeals,

Eleventh Circuit.

No. 96-6445.

Scott Thomas MORRO, Plaintiff-Appellee,

v.

CITY OF BIRMINGHAM, a Municipal Corporation, Defendant-Appellant.

July 21, 1997.

Appeal from the United States District Court for the Northern District of Alabama. (No. CV-92-AR-2339-S), William M. Acker, Jr., Judge.

Before CARNES, Circuit Judge, and HENDERSON and GIBSON[*], Senior Circuit Judges.

CARNES, Circuit Judge:

Municipal liability under 42 U.S.C. § 1983 may be premised upon a single illegal act by a municipal officer only when the challenged act may fairly be said to represent official policy, such as when that municipal officer possesses final policymaking authority over the relevant subject matter. The central issue in this appeal is whether the City of Birmingham's Police Chief is a final policymaker with respect to disciplinary suspension decisions at the City's police department. Had the City not waived the issue, we would be inclined to hold that the Chief is not a final policymaker, because his disciplinary suspension decisions are subject to meaningful administrative review by the Jefferson County Personnel Board. But the City did waive the issue. For that reason and because no issue that was preserved by the City warrants reversal of the judgment, we will not reverse the judgement imposing municipal liability in this case.

## I. BACKGROUND FACTS[1]

Scott Morro has been a police officer with the City of Birmingham since 1986. On June 3,

---

[*]Honorable Floyd R. Gibson, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

[1]This appeal concerns only questions of law. The facts are largely, but not entirely, undisputed. For present purposes, we have resolved all such disputes by viewing the evidence in the light most favorable to Morro, as we are required to do when a case is in this posture. *See, e.g., FDIC v. Stahl,* 89 F.3d 1510, 1514 (11th Cir.1996).

1990, Morro arrested a man named Moses Payne on a charge of disorderly conduct. At that time, Morro's partner, Officer Rodney Hall, was patrolling the Kingston Housing Project with Morro. Hall contemporaneously but independently arrested another man, Benjamin Franklin, who had attempted to interfere with Payne's arrest. Although each officer independently arrested only one suspect, Morrow and Hall cross-referenced Payne's and Franklin's arrest reports by listing the two defendants as accomplices of each other. Payne pleaded guilty, but Franklin's case proceeded to trial.

Before Franklin's case went to trial, a highly-publicized event occurred at a July 4 celebration in Birmingham: The mayor's daughter, Erica Arrington, was arrested on charges of inciting a riot. Ms. Arrington was arrested by Officer Jerry Bahakel, who worked in the same precinct as Morro.

Ms. Arrington was tried in municipal court before Judge Carol Smitherman. The trial was widely attended by the press and interested citizens. It lasted two days, including a Friday night and a rare Saturday session of municipal court. Morro and a number of other South Precinct officers attended parts of the trial, apparently in a show of support for Officer Bahakel. At the conclusion of the trial, Judge Smitherman found Arrington not guilty of all the charges against her.[2]

Benjamin Franklin's case was scheduled to be heard before Judge Smitherman the very next Monday. Morro was subpoenaed to court, and the City prosecutor interviewed Morro about Franklin's arrest. Apparently, the prosecutor hoped that Morro would be able to identify Franklin, even though Morro had not arrested him, because the arrest occurred contemporaneously with Morro's arrest of Moses Payne. To the prosecutor's disappointment, Morro stated that he could not remember anything about Franklin's arrest. Thereafter, Morro was excused from the courtroom. Officer Hall, who had arrested Franklin, was called as a witness, and he provided sufficient testimony to convict Franklin.

For some time after the Arrington acquittal, Judge Smitherman perceived that there were

---

[2]Other controversial events followed Arrington's acquittal. The Police Chief, Arthur Deutcsh, fired Officer Bahakel. Subsequently, Chief Deutcsh was indicted and convicted of tampering with Arrington's arrest records, apparently in an effort to protect her. However, his conviction was reversed on appeal. *See Deutcsh v. State,* 610 So.2d 1212 (Ala.Crim.App.1992).

increasing instances of forgetfulness and absenteeism among officers who were called to testify in her courtroom about arrests they had made. About a month after the Arrington trial, Judge Smitherman complained to the police department about the problem, and an investigation of the matter was launched by the internal affairs division of the department. Lieutenant Lee Ann Self was assigned to conduct the investigation. That investigation was directed toward Morro and one other allegedly forgetful officer.

After concluding her investigation, Lieutenant Self recommended that Morro be disciplined for a violation of departmental rules. Morro was charged with being unprepared for court, and a hearing was held before Police Chief Arthur Deutcsh. Subsequently, Chief Deutcsh suspended Morro without pay for thirty days, and Morro thus became the first officer in Birmingham history to be charged with or sanctioned for being unprepared for court.

As he was entitled to do under applicable City rules and regulations, Morro appealed the Chief's suspension to the Jefferson County Personnel Board. The Personnel Board assigned a hearing officer, Ann Arnold, to hear Morro's case. After hearing all the evidence, she prepared a written report, which recommended that the Board rescind Morro's suspension. The Board agreed, and Morro was reinstated with back pay.

## II. PROCEDURAL HISTORY

After Morro was reinstated, he filed this lawsuit, seeking declaratory, injunctive, and monetary relief against Chief Deutcsh (individually and in his official capacity) and the City of Birmingham. The City moved to dismiss the complaint, primarily on the ground that it was not supported by specific factual allegations. The district court dismissed the complaint for vagueness, but gave Morro leave to amend.

Morro timely filed an amended complaint, and the City filed an answer denying all the material allegations it contained. Following a pretrial conference, the City filed a motion for summary judgment. That motion sought summary judgment both on the merits and, alternatively, on grounds of qualified immunity insofar as Deutcsh was sued in his individual capacity. The district court denied the motion, and the City took an interlocutory appeal of the denial of qualified

immunity. Thereafter, this Court issued a three-sentence per curiam opinion that reversed the district court's denial of qualified immunity. *Morro v. City of Birmingham,* 39 F.3d 325 (11th Cir.1994).

On March 23, 1995, the City filed a second motion for summary judgment. In that motion, the City contended that our prior qualified immunity decision established that the discipline levied against Morro was not the result of any unconstitutional policy. More specifically, the City contended:

> Defendant Deutcsh was at the time of his decision to impose discipline upon the plaintiff the Chief of the Birmingham Police Department. As such he was entitled to and obligated to discipline employees of the department such as plaintiff for actual violations of the rules of the department.

Notably, the City's motion did not allege that Deutcsh was not a final policymaker with respect to departmental disciplinary matters, relying instead on the theory that Deutcsh's actions were not unconstitutional.

The district court denied the City's second summary judgment motion. Thereafter, the court held its second pretrial conference with the parties on April 5, 1995. Following that conference, the district court entered a pretrial order defining the scope of the issues remaining for trial. Absent from the pretrial order is any indication that there was any dispute about whether Chief Deutcsh was a final policymaker with respect to disciplinary suspension decisions at the police department. The issue was not even mentioned.

Following entry of the pretrial order, the City sought certification under 28 U.S.C. § 1292(b) for an interlocutory appeal of the district court's denial of its summary judgment motion. In its motion for § 1292(b) certification, the City did *not* identify as a controlling question of law whether Chief Deutcsh was a final policymaker with respect to the discipline levied against Morro. The district court granted the § 1292(b) certification, and this Court granted permission for the appeal. However, that interlocutory appeal subsequently was dismissed for want of prosecution, because the City failed to timely file a civil appeal statement form and pay the $105.00 docketing and filing fee.

The case proceeded to a jury trial. The jury was drawn from a "holdover" venire, which consisted of eighteen white venirepersons who had not been selected for service on any of the cases

called during the preceding two weeks. The City challenged the venire based on "the way jury rolls are drawn up in the Northern District [of Alabama]," but did not raise any equal protection challenge to the venire on the grounds that it was comprised of "holdover" jurors, all of whom happened to be white. The district court rejected the only venire challenge that the City did raise, and a jury was selected from the all-white holdover jury pool.

During the trial, Morro proffered three "pattern and practice" witnesses. Morro expected those witnesses to testify that they had also suffered adverse employment action at the hands of the Chief in retaliation for their participation in protected speech activities. The City objected on relevancy grounds. The district court sustained the objection on the basis that the City had conceded that the Chief was the policymaker with respect to the disciplinary decision at issue, explaining:

> Well, is it not conceded from the pretrial, is my recollection of this case ... that the City of Birmingham, as is true of most if not all municipalities, has as its decisionmaker ultimately with respect to police command decisions the chief, so that we're not talking about and the defendant is not attempting to distance itself from whatever it was that Chief Deutcsh did or didn't do that might or might not constitute a violation of a constitutional right of the plaintiff because under *Pembaur* and *Praprotnik* and *Jett* he was the City.

> The question then is not—And there's no requirement on the plaintiff in this case, is there, to prove that this man, the chief, did in fact exercise the authority in other instances, whether rightly or wrongly, that he exercised here? It's the City. He was the City. And I think the City concedes that.

The City did not take its next available opportunity to correct the district court's observation that it had conceded that the Chief was the final policymaker. Instead, the City adhered to its relevancy objection despite the district court's stated understanding that the objection was premised upon a concession of the Chief's final policymaker status.

Throughout the trial, and consistent with the district court's explicitly stated rationale for excluding Morro's proffered pattern and practice witnesses, the City made no argument that the Chief was not the final policymaker for § 1983 liability purposes under *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). After Morro rested his case-in-chief, the City filed a Rule 50(a) motion for judgment as a matter of law, but did not base that motion on a *Monell* defense. The court announced its intention to deny the City's Rule 50(a) motion, and shortly thereafter the charge conference began. Only then, at the charge conference,

did the City attempt to raise a *Monell* issue, by contending that the Personnel Board, and not the chief, was the final policymaker with respect to police discipline. The district court did not respond favorably to the City's belated attempt to raise a *Monell* defense, and it denied the City's Rule 50(a) motion.

During the charge conference, the City withdrew its previously-submitted charge that provided: "You are instructed that the Chief of Police was an official whose acts constitute final official policy of the City of Birmingham." The City did not offer any substitute charge on the subject during the charge conference. After the district court had finished instructing the jury, the City objected to the district court's failure to include a pattern jury instruction to the effect that municipal liability under § 1983 must be based on a policy or a decision by a final policymaker, *i.e.,* a "*Monell*" charge. The district court refused to give that charge, and the case was submitted to the jury. The jury returned a $150,000 verdict in favor of Morro, and the district court entered judgment on that verdict.

Following entry of judgment against it, the City filed a post-trial motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b). In that motion, the City reiterated the argument it had made at the charge conference that Chief Deutcsh was not a final policymaker with respect to disciplinary matters at the police department. The district court denied the City's Rule 50(b) motion and set out its reasons for doing so in a memorandum opinion. With respect to the City's final policymaker argument, the district court held, among other things, that the City had failed to preserve the issue for trial. Specifically, the district court explained:

> Rule 16(e), F.R.Civ.P., provides that the final pre-trial order "shall control the subsequent course of the action unless modified by subsequent order," and that that order "shall be modified only to prevent manifest injustice." The City never requested a modification of the pre-trial order to inject a *Monell* defense. This procedural fact renders academic the question of whether the court could have made such a modification at the last minute without *causing* manifest injustice in contrast to *preventing* it.

This appeal followed.

### III. ISSUES

The City raises five issues on appeal. Briefly stated, they are as follows:

1. Whether Chief Deutcsh is a final policymaker under *Monell* and whether the City preserved that

issue for trial.

2. Whether the evidence was sufficient to support the jury's verdict.

3. Whether the district court committed reversible error by admitting the Personnel Board Officer's report into evidence.

4. Whether the district court committed reversible error by refusing to give the City's requested instruction on municipal liability.

5. Whether the City's equal protection rights were violated by the selection of an all-white jury from a holdover venire, and whether the City waived that issue.

### IV. STANDARDS OF REVIEW

This Court reviews *de novo* a district court's denial of a defendant's renewed motion for judgment as a matter of law, applying the same standards as the district court. *See, e.g., Sherrin v. Northwestern Nat'l Life Ins. Co.,* 2 F.3d 373, 377 (11th Cir.1993). In reviewing the sufficiency of the evidence to support the jury's verdict, we draw all reasonable inferences in favor of the nonmovant, *see, e.g., Walker v. NationsBank of Fla., N.A.,* 53 F.3d 1548, 1555 (11th Cir.1995), in order to determine "whether or not reasonable jurors could have concluded as this jury did based on the evidence presented," *Quick v. Peoples Bank of Cullman County,* 993 F.2d 793, 797 (11th Cir.1993) (citations and internal quotation marks omitted). However, questions of law presented by such motions are subject to *de novo* review. *See, e.g., Swint v. City of Wadley,* 51 F.3d 988, 994 (11th Cir.1995).

"[W]e ascribe to the trial court a broad discretion to preserve the integrity and purpose of the pretrial order...." *Hodges v. United States,* 597 F.2d 1014, 1018 (5th Cir.1979) (citations omitted). We have explained that a district court should not "for fear of appellate correction, be forced into an overbroad interpretation of such orders." *Id.* at 1017. Accordingly, we will reverse the trial court's decision to follow the pre-trial order only where "the trial court has so clearly abused its discretion that its action could be deemed arbitrary." *Id.* at 1018. Similarly, we review the district court's evidentiary rulings for abuse of discretion. *See, e.g., Ross v. Buckeye Cellulose Corp.,* 980 F.2d 648, 655 (11th Cir.1993).

So long as a district court's jury instructions "accurately reflect the law, the trial judge is given wide discretion as to the style and wording employed." *U.S. v. Starke,* 62 F.3d 1374, 1380

(11th Cir.1995) (citing *McElroy v. Firestone Tire & Rubber Co.,* 894 F.2d 1504, 1509 (11th Cir.1990)). On appeal, we examine whether the jury instructions, considered as a whole, were sufficient "so that the jurors understood the issues and were not misled." *Id.* (quoting *Wilkinson v. Carnival Cruise Lines, Inc.,* 920 F.2d 1560, 1569 (11th Cir.1991)).

## V. ANALYSIS

A. MUNICIPAL LIABILITY

### 1. *Monell's "Policy or Custom" Requirement*

In *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that municipalities may not be held liable under 42 U.S.C. § 1983 on a theory of *respondeat superior.* Instead, municipalities may only be held liable for the execution of a governmental policy or custom. As the *Monell* Court explained:

> [I]t is when execution of a government's policy or custom, whether made by its lawmakers or by *those whose edicts or acts may fairly be said to represent official policy,* inflicts the injury that the government as an entity is responsible under § 1983.

*Id.* at 694, 98 S.Ct. at 2037-38 (emphasis added).

Later, in *Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), and *City of St. Louis v. Praprotnik,* 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) (plurality opinion), the Supreme Court clarified *Monell* 's "policy or custom" requirement. In *Pembaur,* the Court explained that "municipal liability may be imposed for a single decision by municipal *policymakers* under appropriate circumstances." 475 U.S. at 480, 106 S.Ct. at 1298 (emphasis added). In *Praprotnik,* a plurality of the Supreme Court held that "appointing authorities" who have authority to initiate personnel decisions are not municipal policymakers if those decisions are subject to meaningful administrative review. *See* 485 U.S. at 129-30, 108 S.Ct. at 927-28.

Since *Pembaur* and *Praprotnik,* this Court's decisions have consistently recognized and given effect to the principle that a municipal official does not have final policymaking authority over a particular subject matter when that official's decisions are subject to meaningful administrative review. *See Scala v. City of Winter Park,* --- F.3d ----, ---- (No. 96-3121, 11th Cir.1997) (holding that city manager was not a final policymaker with respect to employment termination decisions at

municipal fire department where those decisions were reviewable by the city civil service board); *Manor Healthcare Corp. v. Lomelo,* 929 F.2d 633, 638 (11th Cir.1991) (holding that a mayor was not a final policymaker with respect to zoning decisions where the city charter provided that the city counsel could override the mayor's veto of zoning ordinances); *Mandel,* 888 F.2d at 792-94 (recognizing that a municipal officer has final policymaking authority when his decisions "are not subject to review" and holding that discretionary review initiated by the municipal official himself does not prevent the official from being a final policymaker); *cf. Hill v. Clifton,* 74 F.3d 1150, 1152 (11th Cir.1996) (accepting concession that city police chief was not final policymaker with respect to employment decisions where police chief's decisions could be reversed by the city manager); *Martinez v. City of Opa-Locka,* 971 F.2d 708, 713-15 (11th Cir.1992) (finding final policymaking authority where "the City Manager's decision to hire or fire administrative personnel is completely insulated from review").

Under our precedents, it is extremely doubtful that Chief Deutcsh is a final policymaker with respect to police discipline such that he may subject the City to § 1983 liability. As the City points out, the Chief's disciplinary decisions regarding dismissal, demotion, or suspension are subject to review by the Jefferson County Personnel Board, with limited further review by the Circuit Court. In fact, the Personnel Board reviewed and reversed the Chief's decision in this case, which demonstrates that the Personnel Board is not merely a rubber stamp for the Chief. Additionally, attached as appendices to the City's appellate brief are copies of excerpts from the Enabling Act of the Personnel Board of Jefferson County, 1945 Ala. Acts 248 (as amended), the Personnel Board of Jefferson County Rules and Regulations, and the City of Birmingham Supplemental Personnel Policies and Procedures. Those materials seem to take final decisionmaking authority on dismissals, demotions, and suspensions out of the Chief's hands.

Based on the City's governing regulations and evidence of its actual practices, it seems that local law makes the Jefferson County Personnel Board, and not the police chief, the final policymaker with respect to police dismissals, demotions, or suspensions. If the City had preserved that issue for trial in the district court, and thus for our review on appeal, we have little doubt that

the City would be entitled to escape the judgment against it on that basis. However, as the district court noted in its memorandum opinion, the City failed to identify its potentially available *Monell* defense as an issue at the pretrial conference or to obtain a modification of the pretrial order to permit it to raise the issue later in the proceedings.

## 2. *The City's Failure to Preserve Its Monell Defense*

Federal Rule of Civil Procedure 16(e) provides for the effect that pretrial orders shall have:

> After any conference held pursuant to this rule, an order shall be entered reciting the action taken. This order shall control the subsequent course of the action unless modified by a subsequent order. The order following a final pretrial conference shall be modified only to prevent manifest injustice.

Fed.R.Civ.P. 16(e). The use of shotgun pleadings in civil cases is a ubiquitous problem. *See, e.g., Ebrahimi v. City of Huntsville Bd. of Educ.,* 114 F.3d 162, 168 (11th Cir.1997) (noting that the complaint in that case was "typical of the sort of shotgun notice pleading we have encountered in scores of cases brought before this Court"). Given the seriousness of that problem, it is "particularly important for district courts to undertake the difficult, but essential, task of attempting to narrow and define the issues" before trial. *Id.* Critical to proper discharge of that duty is effective use of pretrial orders, which in turn requires that such orders be firmly (albeit fairly) enforced.

We have not hesitated to back up district courts when they put steel behind the terms of pretrial orders and hold parties to them. We held in *Hodges v. United States,* 597 F.2d 1014, 1017 (5th Cir.1979), that a defendant can waive a potential defense by failing to ensure that the issue is clearly preserved in the pretrial order. *Hodges* involved a suit brought by two taxpayers who sought a refund of taxes they had paid on behalf of a defunct corporation. *Id.* at 1015. At trial, the primary defense of the IRS was that the taxpayers had no standing to sue because they had paid the corporation's taxes as "mere volunteers who had no legal obligation to pay." *Id.* at 1016. However, the IRS also sought to introduce evidence related to an alternative defense that the taxpayers were in fact liable for the amounts paid. *Id.* The district court refused to allow the IRS to assert that alternative defense at trial. It held that the defense was not preserved in the pretrial order, even though the order listed as an issue for trial "[w]hether or not [the taxpayers] can recover the amount sued for on the ground that they had no legal liability to pay...." *Id.* at 1017 n. 5.

On appeal, the IRS contended that the foregoing statement in the pretrial order encompassed its alternative defense and, alternatively, that the district court should have modified the pretrial order to conform to the proffered evidence. We upheld the district court's construction of the order, as well as the court's refusal to modify it during the trial. We explained:

> We don't believe the trial judge should, for fear of appellate correction, be forced into an overbroad interpretation of such orders.... Without the above rule all litigants would have the burden of anticipating issues whose possible presence in an obfuscated pretrial order is overshadowed by the opposing party's active assertion of totally inconsistent issues. We cannot hold that the district court acted arbitrarily in viewing the unclear pretrial order as not fairly apprising the taxpayers of the defense which the IRS later sought to assert.
>
> We now turn to the IRS's contention that the district court should have allowed the pretrial order to be modified.... [W]e ascribe to the trial court a broad discretion to preserve the integrity and purpose of the pretrial order, and in reviewing trial court decisions which prevent the introduction of otherwise competent and relevant evidence we will not disturb the trial court's ruling unless it is demonstrated that the trial court has so clearly abused its discretion that its action could be deemed arbitrary. Under the particular facts of this case we cannot say that the district court's actions were arbitrary.... We also take note that any injury resulting from our [decision], putting aside issues of surprise and inconvenience ... is a direct result of the IRS's own failure to properly present its case.

*Id.* at 1017-18 (citations and footnote omitted).

The standard enunciated in *Hodges* is the law of this circuit, and we have not been shy about applying it. *See Santiago v. Lykes Bros. S.S. Co.,* 986 F.2d 423, 427 (11th Cir.1993); *Walker v. Anderson Elec. Connectors,* 944 F.2d 841, 844 (11th Cir.1991); *Braswell v. ConAgra, Inc.,* 936 F.2d 1169, 1176 (11th Cir.1991); *Lexington Ins. Co. v. Cooke's Seafood,* 835 F.2d 1364, 1368 (11th Cir.1988). Applying that standard to this case, we cannot say that in interpreting the pretrial order as not including the final policymaker defense, the district court so clearly abused its discretion that its action can be deemed arbitrary.

Likewise, we cannot say that the district court abused its discretion by failing to modify the pretrial order to accommodate presentation of the *Monell* defense at the late stage of the case at which the City chose to press it. That is particularly so in view of the fact that the City successfully convinced the district court to exclude Morro's pattern and practice witnesses on grounds of relevancy and then stood silent in the face of the district court's observation that the City had conceded at the pretrial conference that the Chief was a final policymaker. As in *Hodges,* we "take note that any injury resulting from our [decision], putting aside issues of surprise and inconvenience

... is a direct result of the [defendant's] failure to properly present its case," 597 F.2d at 1018.[3]

## B. SUFFICIENCY OF THE EVIDENCE

The City contends that Morro put on insufficient evidence that he was disciplined in retaliation for his First Amendment activity, because: (1) Morro admitted being unprepared for trial; (2) Morro's proof of causation was based solely on the chronology of events; and (3) the Chief's actions were objectively reasonable in light of clearly established law. We find no merit in those arguments.

First, the City provides no record citation for Morro's purported "admission" that he was unprepared for court. Our own review of the record has not revealed any such admission, which Morro continues to deny having made. Moreover, even if Morro had made such an admission, it would still be up to the jury to decide whether the Chief's disciplinary decision was actually motivated by Morro's unpreparedness or by his show of support for Officer Bahakel in the Arrington trial. If Morro "produced enough evidence for a reasonable jury to conclude that a retaliatory animus substantially motivated his [suspension], [the City] could only rebut this showing by convincing the jury, not the court, that a legitimate reason justified the decision." *Beckwith v. City of Daytona Beach Shores,* 58 F.3d 1554, 1564 (11th Cir.1995) (citation omitted). The City failed to do that.

Second, Morro's proof of motive was not based solely on the chronology of events. The very officer who disciplined Morro was involved in a high visibility controversy over whether he had tampered with arrest records in an attempt to protect Ms. Arrington, and testimony concerning

---

[3]We note that the City's failure to preserve its *Monell* defense for trial is not excused by the fact that, as we explain *infra* Part V.D, the issue of final policymaker status is a legal question for the court, not the jury. Counsel may waive the right to have an issue decided by failing to identify the issue to the court at the pretrial conference, regardless of whether the issue is a legal or factual one. *See Lexington Ins. Co.,* 835 F.2d at 1368 (explaining that the "same policy applies to ... legal issues" as factual ones). This case illustrates the sensibility of that rule. Had the City identified the Chief's alleged policymaker status as an issue, the district court might have granted judgment as a matter of law for the City early in the proceedings, after the court had an opportunity to evaluate the question in light of the evidence offered by Morro's pattern and practice witnesses. Instead, both the court and the plaintiff were blindsided with the issue at the end of the case, after the court had excluded because of the City's objection Morro's pattern and practice evidence. That sort of ambush is precisely what the pretrial conference and order are designed to avoid.

that controversy was presented at trial. In view of the entire record, a reasonable juror could have inferred that the Chief was motivated to act against Morro by a desire to punish his First Amendment activity that tended to reflect unfavorably upon the mayor, his daughter, or the Chief.

Finally, the City's clearly established law argument is irrelevant. The issue before us is not qualified immunity, but evidence of a retaliatory motive. As we have explained above, the evidence was sufficient to support a finding of retaliatory motive.

C. ADMISSION OF THE PERSONNEL BOARD OFFICER'S REPORT

Over the City's objection, the district court admitted into evidence the report of Personnel Board Officer Ann Arnold, which recommended that Morro be reinstated, because the charges against him were "not supported by the evidence." In view of that recommendation, the report could be read to imply that the Chief lacked a proper motive in disciplining Morro.

The City concedes that the report was "arguably relevant," but contends that its admission unfairly prejudiced the jury and confused the issues. Morro responds that the City opened the door to this evidence by suggesting, in its opening statement, that Morro "got a personnel board officer who felt sorry for him." In other words, Morro contends that by introducing the report, he was able to rebut the notion that the personnel board officer made her decision based on emotional factors. Even if admission of the report was otherwise objectionable, the City did open the door to its admission.

Moreover, we note that the district court gave a limiting instruction on the report. Specifically, the district court charged the jury as follows:

> I want to stop because I think I forgot when I talked about what's not evidence, in evidence is the personnel board hearing officer's recommendation upon which the personnel board restored the plaintiff to his job position upon making a decision that the discipline had been improperly imposed. Now, I let that in evidence, and so it is evidence because it's in. But I want to explain to you and make sure you understand that the personnel board does its thing, I do my thing, and you do your thing. They are not the same thing. And the mere fact that the personnel board has made a determination, whatever it is, is not binding on you. It does not adjudicate or determine as a final matter of law or fact that Scott Morro did not intentionally or deliberately or negligently fail to be prepared to testify, which is what the charge was. The personnel board made its choice and decision based on what it had. And you had some of the same evidence perhaps that it had. But what it decided does not bind you one way or the other. It's some evidence for you to consider for whatever weight you want to give it. You can give it some weight or no weight.

That limiting instruction was adequate. Particularly in view of that instruction, we cannot conclude that the district court abused its discretion in admitting the report.

D. JURY INSTRUCTIONS

After the initial jury charge, the City objected and requested that the court give the jury the following pattern instruction, or its equivalent:

> Plaintiff claims that the city of _____, a municipality, is liable to him for the constitutional deprivations that he alleges. You are instructed that the city of _____ may be liable where you find that plaintiff has been deprived of his constitutional rights and such deprivation was done pursuant to a governmental custom, policy, ordinance, regulation or decision. When the plaintiff is injured as a result of a government's policy, custom, regulation or decision, whether made by its lawmakers or by those officials whose edicts or acts may fairly be said to represent official policy, the city itself is responsible for the injury that it caused.

Federal Jury Practice and Instructions Vol. 3 § 103.11. The district court declined to give the requested instruction.

We note first that the City's argument concerning its requested instruction is, essentially, a warmed-over helping of its belated *Monell* defense, which we have already held that the City failed to preserve for trial. Even putting that problem aside, however, the City would not have been entitled to the requested instruction, because it puts a question of law before the jury.

In general, we review a district court's refusal to give a requested instruction by applying the following analysis:

> If a requested instruction is refused and is not adequately covered by another instruction, the court will first inquire as to whether the requested instruction is a correct statement of the law.... If the instruction is a correct statement of the law, the court will next look to see whether it deals with an issue which is properly before the jury.... In the event both these standards are met, there still must be a showing of prejudicial harm as a result of the instruction not being given before the judgment will be disturbed.

*Dempsey v. Mac Towing, Inc.,* 876 F.2d 1538, 1542 (11th Cir.1989) (citations omitted) (alterations in original).

Having reviewed the district court's instructions to the jury, we are satisfied that the "policy or custom" component of the proposed instruction was not covered by any other instruction. Therefore, under *Dempsey,* the next question is whether the requested instruction is a correct statement of the law. We are satisfied that it is, and we note that Morro does not argue otherwise. Accordingly, we next examine whether the requested instruction deals with an issue which is

properly before the jury. We conclude that the requested instruction fails that prong of the *Dempsey* analysis.

There is no question in this case that the decision to suspend Morro was made by Chief Deutcsh. If the Chief is the final policymaker with respect to the area in question, that single decision can give rise to municipal liability. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480, 106 S.Ct. 1292, 1298-1300, 89 L.Ed.2d 452 (1986) (finding municipal liability for violation of plaintiff's Fourth Amendment rights where deputy sheriffs unlawfully entered the plaintiff's office on the express instructions of the county prosecutor). However, the Supreme Court has made plain that the question of whether the Chief is a final policymaker is a legal question for the court, not the jury. *See Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 737, 109 S.Ct. 2702, 2724, 105 L.Ed.2d 598 (1989). Therefore, to the extent that the requested instruction asks the jury to determine whether the Chief's actions may fairly be said to represent official policy, that question is not properly before the jury, even if the issue had not been waived at the pretrial conference. The district court did not err in refusing the requested instruction.

E. COMPOSITION OF THE JURY VENIRE

After completing its voir dire examination, the City challenged the racial composition of the jury venire based on "the way jury rolls are drawn up in the Northern District [of Alabama]." However the City did not raise any equal protection challenge to the venire on the grounds that it was comprised of white "holdover" jurors until the City filed its post-trial motion for judgment as a matter of law.

The Jury Service and Selection Act of 1968, 28 U.S.C. § 1861 *et seq.,* governs the selection of federal juries. It provides that juries should be selected at random from a fair cross section of the community, § 1861, and outlaws racial discrimination in jury selection, § 1862. In other words, the Act provides the statutory method for enforcing the constitutional rights of litigants in the jury selection process. It also provides a specific method by which challenges to a civil petit jury may be raised:

**§ 1867. Challenging compliance with selection procedures**

....

(c) In civil cases, *before the voir dire examination begins,* or within seven days after the party discovered or could have discovered, by the exercise of diligence, the grounds therefor, *whichever is earlier,* any party may move to stay the proceedings on the ground of substantial failure to comply with the provisions of this title in selecting the petit jury.

....

(e) The procedures prescribed by this section shall be the *exclusive* means by which a person accused of a Federal crime, the Attorney General of the United States or a party in a civil case may challenge any jury on the ground that such jury was not selected in conformity with the provisions of this title.

*Id.* § 1867(c) & (e) (emphasis added).

In *United States v. Green,* 742 F.2d 609, 612 (11th Cir.1984), this Court held that a criminal defendant's failure to comply with the provisions of § 1867 precluded him from raising on appeal a constitutional challenge to the petit jury venire. We held that "[i]n the absence of strict compliance, Green's attempt to challenge the jury venire on constitutional grounds is without legal effect and is futile." *Id. Green* was a criminal case, but it would be anomalous if criminal defendants were held to stricter compliance with § 1867 than civil litigants. The City's equal protection objection to use of an all-white holdover venire was not in compliance with § 1867, because it was not timely. Therefore, under *Green,* the City's equal protection challenge to the holdover jury venire could not be entertained by the district court and cannot be entertained on appeal. Of course, we do not mean to imply that the challenge was in any way meritorious.

## VI. CONCLUSION

The City failed to preserve the issue of whether the City of Birmingham's Police Chief is a final policymaker with respect to disciplinary suspension decisions at the City's police department. The City's arguments related to evidentiary sufficiency, admission of evidence, and jury instructions lack substantive merit. The City's equal protection challenge to the composition of the jury venire was untimely. Accordingly, the judgment of the district court is AFFIRMED.