[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 07-13439
Non-Argument Calendar

————————————————

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 17, 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 06-00426-CV-FTM-29-DNF

MICHAEL MASCHMEIER,

Plaintiff-Appellant,

versus

MICHAEL SCOTT,
as Sheriff of Lee County, Florida,

Defendant-Appellee.

————————————————

Appeal from the United States District Court
for the Middle District of Florida

————————————————

**(March 17, 2008)**

Before TJOFLAT, ANDERSON and BLACK, Circuit Judges.

PER CURIAM:

Michael Maschmeier appeals the district court's grant of summary judgment

to Sheriff Michael Scott on Maschmeier's 42 U.S.C. § 1983 claim of retaliatory discharge for political activities. On appeal, Maschmeier argues that the district court erred in finding that Scott was not a final policymaker and that Maschmeier's termination was lawful. Maschmeier also contends that the district court erred in ignoring his claim regarding retaliation for submission of a complaint to the Florida Election Commission.

## I. FACTS

Maschmeier was employed in the Lee County Sheriff's Office from 1980 until his termination in January of 2006.[1] At some point he became a deputy sheriff, and in 2000 was promoted to patrol sergeant. In 2004, the sheriff's election took place, in which the incumbent sheriff, Rod Shoap, ran against Michael Scott. Maschmeier supported Shoap's reelection. In support of Shoap's candidacy, Maschmeier participated in a door-to-door canvas, held a sign supporting Shoap in public view, and attended two debates between the candidates, at one of which he asked a question. Maschemeier also spoke of his support for Shoap in off-duty conversations, chauffeured Shoap in public parades, and donated money to Shoap's campaign. Scott defeated Shoap in the election.

---

[1]Because Maschmeier appeals from a grant of summary judgment to Scott, we view the facts in the light most favorable to Maschmeier here. See Gitlitz v. Compagnie Nationale Air France, 129 F.3d 554, 556 (11th Cir. 1997).

After the election, Scott requested the resignations of members of Shoap's executive staff. Other officers who had supported Shoap were also dismissed or demoted. Maschmeier retained his position. Sometime after the election, Maschmeier requested a transfer to the day shift, which was refused. Maschmeier did receive a reassignment to a desk position on the night shift, which he had not requested. He was then transferred to a different district. Maschmeier was transferred to another desk position in October 2005.

At a meeting after his first reassignment, some of Maschmeier's superiors said that they knew he was unhappy about Scott's election to sheriff. Maschmeier's immediate supervisor also said that he knew Maschmeier was upset about the new administration. In response to these statements, Maschmeier reiterated his commitment to the department and to Sheriff Scott.

In November 2005, while off-duty, Maschmeier began preparing public document requests regarding Scott and his supporters. Maschmeier conducted some internet searches on his co-workers while on the night shift, and also downloaded two "scrubber" programs onto his computer, in violation of office policy.[2] At some point he also filed a complaint against Scott with the Florida

[2]According to the deposition of a lieutenant in the technical investigation and support division of the sheriff's office, the scrubber programs are used to delete internet cookies and recent document lists, but not actual files.

Election Commission. Suspecting that Maschmeier was preparing his public records requests while on duty, Deputy Chief Ferrante ordered an examination of Maschmeier's computer. The examination revealed the installation of the unauthorized scrubber programs and the remnants of a public records request. After an internal affairs investigation, which substantiated the findings of the examination of Maschmeier's computer, Scott terminated Maschmeier's employment in January 2006. Maschmeier filed suit against Scott in his official capacity in August 2006, alleging unconstitutional retaliation for Maschmeier's political activities and for his election commission complaint. The district court granted summary judgment to Scott, and this appeal followed.

## II. DISCUSSION

Maschmeier argues that the district court erred in finding that Scott was not a final policymaker for the Lee County Sheriff's Office and that Maschmeier's involvement with Shoap's reelection campaign was not protected political speech. We review a grant of summary judgment de novo, viewing the evidence in the light most favorable to the non-moving party and applying the same legal standards as the district court. Gitlitz, 129 F.3d at 556. We also review de novo a district court's determination that an official is or is not a final policymaker. Scala v. City of Winter Park, 116 F.3d 1396, 1399 (11th Cir. 1997).

A.    Final Policymaker Analysis

Maschmeier filed suit against Scott in his official capacity as Sheriff of Lee County only.  Suits against state officials in their official capacity are treated as suits against the state itself.  Hafer v. Melo, 502 U.S. 21, 25, 112 S. Ct. 358, 361 (1991).  Maschmeier's suit therefore attempts to hold Lee County liable for Scott's actions as Sheriff.  Municipalities cannot be liable under 42 U.S.C. § 1983 on a theory of respondeat superior.  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691, 98 S. Ct. 2018, 2036 (1978).  Rather, "[m]unicipal liability under 42 U.S.C. § 1983 may be premised upon a single illegal act by a municipal officer only when the challenged act may fairly be said to represent official policy, such as when that municipal officer possesses final policymaking authority over the relevant subject matter."  Morro v. City of Birmingham, 117 F.3d 508, 510 (11th Cir. 1997).  Therefore, in order for Maschmeier to prevail on his § 1983 claims, Scott must have been the final policymaker in regard to Maschmeier's termination.

A municipal official is not a final policymaker when his or her decisions are subject to meaningful administrative review.  Scala, 116 F.3d at 1401.  Automatic review of the official's decisions is not required for the review to be meaningful; an opportunity for meaningful review is sufficient.  Id. at 1402.  When a council or board has the power to review and reverse a municipal official's decision, final

5

policymaking authority does not vest in the official. See Id. (holding that a city manager and his subordinate were not final policymakers in regard to plaintiff's termination because a civil service board had the authority to review the termination); Quinn v. Monroe County, 330 F.3d 1320, 1326 (11th Cir. 2003) (finding that the career services council's power to review the county administrator's termination decision deprives the county administrator of final policymaking authority); Manor Healthcare Corp. v. Lomelo, 929 F.2d 633, 637 (11th Cir. 1991) (holding that the city council's ability to override the mayor's veto in regard to zoning issues meant that the mayor was not the final policymaker for zoning decisions). The plaintiff can try to demonstrate that the board's review is not meaningful, such that the official should be considered the final policymaker. See Quinn, 330 F.3d at 1326; Scala, 116 F.3d at 1402. To succeed in such an argument, the plaintiff would need to show that the board has defective procedures, merely "rubber stamps" the official's decisions, or ratified the official's decision and improper motive. See Quinn, 330 F.3d at 1326; Scala, 116 F.3d at 1402. However, the existence of a reviewing board has generally been sufficient to find that the official in question did not have final policymaking authority. See, e.g., Quinn, 330 F.3d at 1326; Morro, 117 F.3d at 514; Scala, 116 F.3d at 1402-03.

In this case, there is a civil service board ("Board") that reviews the sheriff's termination decisions. The Board has the authority to reinstate an employee terminated by the sheriff. Maschmeier has not argued that the Board's proceedings or process are deficient, nor has he argued that the Board ratified Scott's allegedly unconstitutional decision and improper motive.[3] Instead, Maschmeier contends that because the Board has only overturned one termination by the sheriff in fifteen years, it does not provide meaningful review of the sheriff's decisions. Even taken in the light most favorable to Maschmeier, we cannot conclude that this low reversal rate renders the Board's review meaningless under our case law. As Maschmeier himself acknowledges, a majority of the employees appearing before the Board admit their wrongdoing and seek only a mitigation of the penalty. Given the minority of cases in which the employee is seeking a reversal of his or her termination, one overturned termination in fifteen years is not sufficient to show that the Board is a mere "rubber stamp." Therefore, we find that the sheriff's termination decisions are subject to meaningful administrative review, and Scott thus cannot be the final policymaker.[4]

---

[3]Maschmeier did not appeal his termination to the Board, so he cannot make this argument in any event.

[4]Maschmeier also argued on appeal that the district court erred in denying him additional time for discovery to rebut Scott's assertion that he was not a final policymaker. In order to hold a municipality liable for the acts of a municipal official, the plaintiff must demonstrate that the

7

Because Scott was not the final policymaker in regard to Maschmeier's termination, Maschmeier's § 1983 claims must fail. We note that the district court did not address Maschmeier's claim of retaliation for filing a complaint with the Florida Election Commission. However, because Scott was not the final policymaker, Maschemeier cannot proceed with this retaliation claim, and we accordingly find no error. Finally, Maschmeier's argument regarding the applicability of section 30.078 of the Florida Statutes is misplaced. Section 1983 provides a cause of action when a state or local official has violated the plaintiff's federal constitutional rights. 42 U.S.C. § 1983 (2006) ("Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."). Therefore, a claim for a violation of section 30.078 of the Florida Statutes cannot be brought under § 1983. The

official was a final policymaker. Morro, 117 F.3d at 510. The final policymaker element must be proven as part of the plaintiff's case; it is not an affirmative defense to municipal liability under § 1983. Manor Healthcare, 929 F.2d at 636-37. We therefore find no error in the district court's refusal to grant extra discovery to Maschmeier.

judgment of the district court is accordingly

AFFIRMED.