[DO NOT PUBLISH]

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 24-12883

Non-Argument Calendar

_____

PHOENIX RIDGE GA TC, LP,

Plaintiff-Appellant,

*versus*

CITY OF ATLANTA, GEORGIA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:23-cv-04511-MHC

_____

Before WILLIAM PRYOR, Chief Judge, and BRANCH and ANDERSON, Circuit Judges.

PER CURIAM:

Phoenix Ridge GA TC, LP, appeals the dismissal of its complaint alleging a federal claim of municipal liability for a regulatory taking of property and state law claims of inverse condemnation, breach of contract, and infringement of vested property rights against the City of Atlanta. *See* 42 U.S.C. § 1983; *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978). We affirm.

## I. BACKGROUND

Millenia Housing Management Ltd. LLC, an entity related to Phoenix Ridge, purchased the Forest Cove building. Forest Cove operated under contract for Section 8 Housing Assistance Payments with the United States Department of Housing and Urban Development, which provided the owner a monthly rental subsidy. Phoenix Ridge planned to rehabilitate the building, relocate its residents, and obtain funding from the Georgia Department of Community Affairs.

After the City approved building permits to rehabilitate the property, the Director of the Bureau of Code Compliance initiated an in rem proceeding in the municipal court to declare Forest Cove a public nuisance. The municipal court entered an order that Forest Cove was a public nuisance and ordered its demolition. Phoenix Ridge appealed.

Meanwhile, the Department of Community Affairs informed Phoenix Ridge it would not provide funding based on the decision of the municipal court. The City and Phoenix Ridge entered into a settlement agreement where Phoenix Ridge agreed to relocate residents and both parties agreed to file a joint consent order requesting vacatur of the demolition order. Mayor Andre Dickens signed the agreement on behalf of the City. Phoenix Ridge relocated all Forest Cove residents, but the City chose not to sign the consent order.

The Fulton County Superior Court ruled that the City breached the settlement agreement and directed the parties to submit a proposed order vacating the demolition order. But the Department of Community Affairs denied Phoenix Ridge's application for funding, and the Department of Housing and Urban Development denied Phoenix Ridge's proposal to sell Forest Cove with the Housing Assistance Payment contract. So, Phoenix Ridge voluntarily dismissed the action in the state court.

Phoenix Ridge filed a complaint in the district court alleging a regulatory taking in violation of the Fifth and Fourteenth Amendments. *See* 42 U.S.C. § 1983. It complained that the City initiated an action in rem to abate a public nuisance after approving permits for rehabilitation and refused to seek a consent order to vacate the demolition order. It also alleged state law claims of inverse condemnation, breach of contract, infringement of vested property rights, and attorney's fees and costs.

The City filed a motion to dismiss. It argued that the section 1983 claim should be dismissed because Phoenix Ridge failed to allege an official policy or unofficial custom. Phoenix Ridge responded that the single action of an official can represent an official policy if the official has final policymaking authority. It pointed to provisions of local law that it argued gave the director final authority to initiate an in rem proceeding and gave the mayor authority over contracts.

The district court granted the motion to dismiss. It ruled that Phoenix Ridge had failed to allege municipal liability based on a policy or unofficial custom. It ruled that the director was not a final policymaker when initiating an in rem proceeding because that discretionary decision had no independent legal effect without the municipal court adjudicating it. It also ruled that the mayor was not a final policymaker when breaching the settlement agreement because the mayor may only negotiate contracts after final approval by the city council. The district court declined to exercise supplemental jurisdiction over the state law claims and dismissed them without prejudice.

Phoenix Ridge moved for reconsideration and for leave to amend. It argued the district court applied an evidentiary standard instead of a pleading standard in determining whether the director and mayor were final policymakers. It requested that the district court take judicial notice of local laws, including provisions of the city charter and code and administrative orders relevant to the mayor's authority to breach the settlement agreement. The City

responded arguing that the district court was allowed to make a legal determination about the scope of the director and mayor's authority when resolving a motion to dismiss. It also argued that amendment would be futile because the new law did not refute the determination that the mayor lacked final policymaking authority regarding the settlement agreement.

The district court denied Phoenix Ridge's motions. It ruled that it was permissible to determine the scope of policymaking authority in ruling on a motion to dismiss. It ruled that the authorities cited by Phoenix Ridge did not establish that the mayor has final policymaking authority. The district court denied leave to amend as futile.

## II. STANDARDS OF REVIEW

We review a dismissal for failure to state a claim *de novo* and accept as true the complaint's factual allegations and construe them in the light most favorable to the plaintiff. *Hunt v. Aimco Props.*, 814 F.3d 1213, 1221 (11th Cir. 2016). We review a decision to deny leave to amend based on futility *de novo*. *City of Miami v. Citigroup Inc.*, 801 F.3d 1268, 1275 (11th Cir. 2015).

## III. DISCUSSION

We divide our discussion in two parts. First, we explain that the district court did not err in dismissing Phoenix Ridge's

complaint. Second, we explain that the district court did not err in denying leave to amend as futile.

### A.  The District Court Did Not Err in Dismissing Phoenix Ridge's Complaint.

Phoenix Ridge argues the district court erred in dismissing its section 1983 claim because the district court applied a heightened pleading standard. We disagree. A municipality may not be held vicariously liable for constitutional violations committed by its officers. *Hoefling v. City of Miami*, 811 F.3d 1271, 1279 (11th Cir. 2016).

A plaintiff may establish either an official policy or an unofficial custom or practice of the municipality shown through the repeated acts of a final policymaker. *Grech v. Clayton Cnty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (en banc). The first method allows a single incident of unconstitutional activity caused by an unconstitutional policy, *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985), but the second method requires a "longstanding and widespread practice," *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991). A municipality may be liable for a single action of an individual when "the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 481 (1986).

Phoenix Ridge sought to establish that the City was liable for the actions of the director and mayor as decisionmakers with final policymaking authority. Its complaint did not allege that any individuals had final policymaking authority. Instead, it argued that the

24-12883               Opinion of the Court                7

mayor and director had final policymaking authority in response to the City's argument that it had not alleged an official policy or an unofficial custom or practice. Although Phoenix Ridge argues that the identification of policymakers is an evidentiary standard, not a pleading requirement, it conceded below and on appeal that a district court could consider whether an identified policymaker had final policymaking authority in a motion to dismiss in certain circumstances.

The precedents Phoenix Ridge cites for the proposition that the final policymaker determination cannot be made when ruling on a motion to dismiss are inapposite. In *Hoefling*, we reasoned that "not all theories of municipal liability under § 1983 require (or depend on) a single final policymaker" and concluded that "identifying and proving that a final policymaker acted on behalf of a municipality is an evidentiary standard, and not a pleading requirement." 811 F.3d at 1279–80 (citation and internal quotation marks omitted). We held that the district court erred in requiring Hoefling to identify the city official who acted as the final policymaker because he sufficiently alleged an informal custom through allegations that the municipality had systematically engaged in similar conduct. *Id.* at 1279–81. And in *Christmas v. Nabors*, we held that the plaintiff did not need to allege the identity of a final policymaker because he alleged a widespread practice that jail officials scan all incoming mail. 76 F.4th 1320, 1329–30 (11th Cir. 2023). In contrast, Phoenix Ridge did not allege an unofficial custom or widespread practice and relied on the single decisions of the mayor and the director.

Nor does our decision in *Brown* support the argument of Phoenix Ridge. In *Brown*, neither party addressed the final policymaker method for establishing municipal liability below or on appeal, so we remanded to the district court to consider all available policymaking authority. 923 F.2d at 1480.

The district court did not err in ruling the director and mayor were not final policymakers. When deciding whether an official had final policymaking authority, we look to state and local positive law as well as custom and usage having the force of law. *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1292 (11th Cir. 2004). Our inquiry focuses on the subject matter of the alleged violation. *See Morro v. City of Birmingham*, 117 F.3d 508, 514 (11th Cir. 1997). In assessing whether an official acted as a final decisionmaker, we look to whether there was an opportunity for meaningful review of the decisionmaker's actions. *Id.*

The director was not a final policymaker when filing the in rem action. The Atlanta Housing Code gives the director power to enforce provisions of the code and file a complaint in rem against a property he identifies as unfit for habitation subject to a final determination by the municipal court following a hearing. *See* Atlanta Housing Code of 1987 §§ 7(a), 54(a)-(d). The decision to file a complaint has no independent legal effect absent adjudication by the municipal court. *See Morro*, 117 F.3d at 514 (stating that the police chief was not a final policymaker when his disciplinary decisions were subject to review by a personnel board and the circuit court).

Phoenix Ridge's reliance on *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989 (11th Cir. 1990), is misplaced. *Bannum* concerned the doctrine of ratification "when a subordinate public official makes an unconstitutional decision and when that decision is then adopted by someone who does have final policymaking authority." *Matthews v. Columbia Cnty.*, 294 F.3d 1294, 1297 (11th Cir. 2002). In *Bannum*, the decision of the Code Enforcement Board was affirmed by the Board of Adjustment as the highest policymaking body and then became an official decision. *Bannum*, 901 F.2d at 998–99. Here, in contrast, the director is not a subordinate of the municipal court.

The mayor also did not have final policymaking authority when deciding not to sign the consent order. The City Charter establishes that the mayor has authority to execute contracts subject to approval by city council. Atlanta City Charter § 3-104(10) (The mayor has the power "[w]hen authorized by the council" to "negotiate . . . contracts . . . after final approval by the council[.]"); Atlanta City Code § 2-176 ("The mayor shall execute all contracts approved by the council . . . and shall indicate, in writing, to the president and members of the city council the reasons why the contract has not been executed."). Because the city council had to approve any contracts or decisions not to execute contracts, the mayor lacked final policymaking authority. *Manor Healthcare Corp. v. Lomelo,* 929 F.2d 633, 637 (11th Cir. 1991) (holding that the city council's ability to override the mayor's veto for zoning issues meant that the mayor was not the final policymaker for zoning decisions). And Phoenix Ridge did not argue in the district court that the city

council was a final policymaker, so we will not consider this theory for the first time on appeal. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1332 (11th Cir. 2004) (holding that we will not consider an argument raised for the first time on appeal absent extraordinary circumstances).

### B. *The District Court Did Not Err in Denying Leave to Amend.*

The district court did not err in denying Phoenix Ridge's motion for leave to amend as futile. *Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1094 (11th Cir. 2017). Phoenix Ridge pointed to the mayor's authority to encourage growth and promote the well-being of the city along with administrative orders to argue that the mayor had authority over development plans for Forest Cove and had an interest in breaching the settlement agreement. *See* Atlanta City Charter § 3-104(11). But these authorities do not address whether the mayor had the authority to breach a contract and refuse to sign the consent order without approval from the city council. *See Morro*, 117 F.3d at 514.

The provision of the city code giving the city attorney, who answers to the mayor, authority to settle claims for under $500 does not change that conclusion. *See* Atlanta City Code § 2-404 ("The City attorney shall have authority, without approval of the council, to settle all claims and suits for sums not to exceed $500.00 in each instance. Settlement of claims and suits in excess of $500.00 shall first be approved by the council."); Atlanta City Charter § 3-303(f) ("The city attorney shall be responsible to the mayor and to the city council."). The settlement agreement required the City to advance

24-12883                Opinion of the Court                11

funds and for Phoenix Ridge to reimburse the City for relocating Forest Cove residents, costs which Phoenix Ridge alleged exceeded $9 million, so the provision giving the city attorney settlement authority could not apply.

### IV. CONCLUSION

We **AFFIRM** the order dismissing Phoenix Ridge's complaint and denying leave to amend.