[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-11053
Non-Argument Calendar
_____

D.C. Docket No. 6:16-cv-01360-CEM-TBS

JOSE RIVERA,
as parent and natural Guardian of C.R., a minor,

Plaintiff-Appellant,

versus

MATTHEW RING,
K-9 sergeant, Badge number 15099,
in his individual capacity,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(August 24, 2020)

Before LUCK, LAGOA, and HULL, Circuit Judges.

PER CURIAM:

C.R. appeals the unfavorable jury verdict in his 42 U.S.C. § 1983 excessive force suit against K-9 Sergeant Matthew Ring.  We have thoroughly reviewed the record and conclude that no reversible error has occurred; we affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

C.R. and two other minors burglarized an elementary school, and accidentally tripped the alarm.  Police officers arrived on scene, including Sergeant Ring and his dog Diesel.  Ring spotted the boys, yelled for them to halt, and warned them that if they did not surrender, they would be bitten.  The boys did not comply and, instead, ran away.  Ring chased them and eventually pursued only C.R.  Ring again ordered C.R. to stop, which he ignored.  Ring commanded Diesel to apprehend C.R.  While running away, C.R. tripped and fell to the ground, allowing Diesel to apprehend him by biting his arm.  During the scuffle, C.R. tried to pry Diesel's mouth off his arm, forcing Diesel to readjust his bite.  Ring told C.R. to stop resisting.  Once C.R. complied, Diesel let go.  Diesel was on C.R. for nine seconds, leaving C.R. with multiple lacerations.  Although C.R. was arrested, the criminal charges were later dismissed.

Jose Rivera, on behalf of C.R., brought a section 1983 action against Ring, alleging, among other things, excessive force.  Before, during, and after trial, the district court made certain decisions that are relevant to this appeal.

The district court, in its case management role, set a deadline of six months before trial to file any Daubert[1] motions.  During that timeframe, Ring sought to introduce the expert testimony of Dr. Richard Hough.  Rivera did not file a Daubert motion but, instead, waited until after opening statements to object to Dr. Hough's testimony.  The district court stated that such an objection should have been made in a Daubert motion before trial.  Nonetheless, the district court was willing to entertain Rivera's objection to Dr. Hough's testimony, stating that "if [Rivera] want[ed] to do an ore tenus motion in limine, [it would] consider it."  "I feel like I'm winging it now," the district court continued, "because I'm going . . . to make a decision" as to Dr. Hough's testimony.  The district court ultimately, over Rivera's objections, allowed Dr. Hough to testify as an expert witness.

Before trial, Rivera sought to admit evidence of Diesel's previous apprehensions of suspects.  Ring moved in limine to exclude such evidence.  Rivera objected, but the district court granted Ring's motion.

During jury selection, Ring attempted to use one of his peremptory challenges on an African-American panel member.  Rivera requested a race-neutral reason for the strike.  The district court denied Rivera's request, finding that Rivera had not established a prima facie case, and excused the juror.

---

[1] See Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993).

3

After a three-day jury trial, the jury returned a verdict in favor of Ring. Rivera then moved for judgment notwithstanding the verdict or, alternatively, a new trial. The district court denied both motions. Rivera appealed.

## DISCUSSION

On appeal, Rivera claims that the district court erred when it (1) admitted the expert testimony of Dr. Hough, (2) excluded evidence of Diesel's prior attacks, (3) denied his Batson[2] challenge, and (4) denied his motion for new trial. We disagree.

### *Admission of Dr. Hough's Testimony*

Rivera contends the district court erred in refusing to exclude Dr. Hough's expert testimony because: (a) although Dr. Hough was qualified in the general area of the use of force, he was not qualified in the specialized area of the use of force relating to police-trained dogs; (b) Dr. Hough's testimony that Ring's actions comported with Florida police practices and procedures was not helpful to the jury and was a matter of common sense, not requiring any expertise; and (c) the conclusions Dr. Hough drew in his testimony improperly supplanted the jury's fact-finding role. Having reviewed the district court's decision for an abuse of discretion, see Prieto v. Malgor, 361 F.3d 1313, 1317 (11th Cir. 2004), we see no error.

A trial judge has broad discretion in determining whether expert testimony should be admitted or excluded. United States v. Costa, 691 F.2d 1358, 1361 (11th

---

[2] See Batson v. Kentucky, 476 U.S. 79, 95–98 (1986).

Cir. 1982).  The admissibility of expert testimony is governed by Federal Rule of Evidence 702.  When evaluating the admissibility of expert testimony, this court engages in a three-part inquiry that addresses the expert's qualifications, reliability, and helpfulness.  United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc).

An expert is qualified when he is able "to testify competently regarding the matters he intends to address."  Id. at 1260 (internal quotation marks omitted).  Dr. Hough was qualified in the sub-area of police-trained dogs by virtue of his "knowledge, skill, experience, training, or education."  Fed. R. Evid. 702.  Dr. Hough holds multiple degrees in public administration and law enforcement, was a law enforcement officer for decades, and has taught and trained new officers in Florida on the use of force since 1984.  This includes instructing officers regarding the proper times to use a police dog to apprehend a fleeing suspect.  Further, Dr. Hough has taught classes at universities on the use of force and published five peer-reviewed articles and a textbook on the use of force.  Although there may be experts with more experience in police-trained dogs, Dr. Hough was certainly qualified to testify as to Ring's conduct in light of his knowledge, skill, experience, training, and education.  See id.

An expert's testimony is helpful if it "assists the trier of fact, through the application of scientific, technical, or specialized expertise, [(1)] to understand the

5

evidence or [(2)] to determine a fact in issue." Frazier, 387 F.3d at 1260 (internal quotation marks omitted). We have held that the standard to determine helpfulness is whether the expert testimony "concerns matters that are beyond the understanding of the average lay person." Id. at 1262–63. Here, a lay juror would not know Florida's practices and procedures regarding the use of force and whether Ring's actions were consistent with those practices and procedures. Dr. Hough's testimony provided such knowledge. Dr. Hough, for example, laid out the extensive training requirements an officer and a police dog must undergo to be certified for the K-9 unit. Dr. Hough's testimony helped the jury determine the ultimate fact at issue: whether Ring's actions were reasonable—the crux of any excessive-force case. See Kesinger v. Herrington, 381 F.3d 1243, 1248 (11th Cir. 2004) (noting that, for excessive-force cases, "the question is whether the officer's actions are objectively reasonable in light of the facts and circumstances confronting him" (internal quotation marks omitted)). Accordingly, Dr. Hough's testimony was admissible because he was qualified, the methodology he used was reliable, and his testimony was helpful to the jury.

As to Rivera's argument that Dr. Hough's testimony replaced the jury's decision-making function, this, too, lacks merit. The jury's role in this excessive-force case was to determine whether the amount of force Ring authorized Diesel to use was reasonable. Dr. Hough never made such a determination. Rather, he

6

summarized Florida police practices of K-9 officers and concluded that Ring's actions adhered to those practices. The district court did not abuse its discretion in refusing to exclude Dr. Hough's testimony.

*Diesel's Prior Attacks*

Prior to trial, the district court granted Ring's motion in limine to preclude any reference to a 2013 report detailing the injuries Diesel inflicted upon suspects that year and photographs showing the injuries Diesel inflicted upon a suspect within a month of this incident. Rivera claims that the district court's decision was erroneous because such evidence was relevant for two reasons: (1) the evidence would have demonstrated that Ring was on notice that Diesel was prone to biting a fleeing suspect; and (2) Dr. Hough's report would have been different had he been apprised of this information. We review the grant of a motion in limine for an abuse of discretion. Mercado v. City of Orlando, 407 F.3d 1152, 1156 (11th Cir. 2005). Because Rivera's arguments are unavailing, we see no abuse in the district court's decision.

Evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence" and "is of consequence in determining the action." Fed. R. Evid. 401. The photographs and the report do not establish that Ring was on notice of Diesel's propensity to bite fleeing suspects. The photographs only show an injury caused by Diesel and say nothing about whether

7

Ring acted unreasonably under the circumstances of that arrest. And the 2013 report detailed Diesel's apprehensions while assigned to another officer. The evidence was not relevant to whether Ring acted reasonably in handling Diesel.

Rivera next argues that Diesel's previous apprehensions were relevant because they could have altered Dr. Hough's report. This argument, too, is refuted by the record. Dr. Hough testified that proof of Diesel's previous apprehensions would not have changed his report, stating that no study has shown that if a police dog has bitten someone, then "there [is] an increased propensity to bite." Not only that, Dr. Hough stated that he looked at all the training logs for Diesel and determined that Diesel's "bite ratio is actually less than several national studies." The evidence of other bites would not have changed Dr. Hough's opinion.

### Batson Challenge

During voir dire, Ring exercised one of his peremptory strikes on an African-American panel member. Rivera requested that Ring provide a race-neutral reason for the strike. The district court denied Rivera's request and excused the juror, finding that Rivera had not made a prima facie showing of discrimination needed to compel Ring to provide a race-neutral reason for the strike. On appeal, Rivera claims that the district court applied the wrong legal standard in determining whether Rivera established a prima facie case of discrimination. "We review the district court's resolution of a Batson challenge under the clearly erroneous standard." Cent. Ala.

8

Fair Hous. Ctr. v. Lowder Realty, 236 F.3d 629, 635 (11th Cir. 2000). "As part of that review, we give great deference to the district court's finding as to the existence of a prima facie case." Id. (internal quotation marks omitted).

Under Batson, a party establishes a prima facie case that the juror was struck because of race where he shows that "'relevant circumstances raise an inference' that his opponent 'has exercised peremptory challenges to remove from the venire members'" of a protected group. Fludd v. Dykes, 863 F.2d 822, 829 (11th Cir. 1989) (quoting Batson, 476 U.S. at 96). Relevant circumstances include: (a) "the striking party's pattern of striking venire members of a particular race"; (b) the striking party's "questions or statements during voir dire to members of a particular race that support the inference of a discriminatory purpose"; (c) "the subject matter of the case being tried"; (d) "the race and ethnicity of the defendant"; and (e) "the racial composition of the pool of remaining potential jurors." United States v. Robertson, 736 F.3d 1317, 1326 (11th Cir. 2013) (internal quotation marks omitted).

Here, the "relevant circumstances" show that the district court did not clearly err in finding that Rivera did not establish a prima facie case that the juror was struck because of his race. There is no record evidence that Ring had a "striking pattern" of striking African-American panel members from the venire. See Robertson, 736 F.3d at 1326. The questions and statements made to this panel member during voir dire were no different than any other prospective panel member. Rivera, the

9

plaintiff, was not African-American.  And the subject matter of the case was not "racially motivated."  See id.

*Motion for New Trial*

Rivera next contends that the district court should have granted his motion for new trial due to the improper admission of evidence—specifically, portions of Dr. Hough's testimony.  In particular, he argues that Dr. Hough's testimony: (a) was unresponsive; (b) was perjurious and misleading; (c) contained assertions that were not included in his report; and (d) suggested that he prepared a second and individualized expert report.  We review a district court's denial of a motion for new trial for an abuse of discretion.  Lambert v. Fulton Cty., 253 F.3d 588, 595 (11th Cir. 2001).  A new trial is warranted if an evidentiary error affected "substantial rights" or caused "substantial prejudice."  Peat, Inc. v. Vanguard Research, Inc., 378 F.3d 1154, 1162 (11th Cir. 2004).  Because no evidentiary error occurred, we agree with the district court's decision to deny Rivera's motion for new trial.

Rivera never argued in his motion for new trial that Dr. Hough's testimony was unresponsive, perjurious, or misleading.  He cannot raise these arguments "for the first time on appeal."  See Knight ex rel. Kerr v. Miami-Dade Cty., 856 F.3d 795, 818 (11th Cir. 2017) ("The plaintiffs challenge the closing statements for the first time on appeal," but "[t]he plaintiffs did not . . . raise any claims regarding the

10

closing statements in their motion for a new trial. . . . The plaintiffs have waived this argument.").

Rivera asserts that Dr. Hough made certain statements that were not included in his report. The district court noted that these alleged remarks were made to rebut certain inadmissible questions posed by Rivera. In other words, Rivera opened the door to Ring's line of questioning. "Opening the door," also known as "curative admissibility," occurs when a party offers inadmissible evidence before a jury. Bearint ex rel. Bearint v. Dorell Juvenile Grp., Inc., 389 F. 3d 1339, 1349 (11th Cir. 2004). To correct any unfair prejudice caused by the inadmissible evidence, the district court "may in its discretion allow the opposing party to offer otherwise inadmissible evidence on the same matter." Id. After reviewing the record, we conclude that the district court acted within its discretion in allowing Dr. Hough to answer certain questions not included in his report because the door had been opened by Rivera.

Rivera lastly asserts that Dr. Hough produced at least two versions of his report but provided Rivera with only one version. During his testimony, Dr. Hough stated that he brought the "wrong copy" of his report. But after finding out this information, Rivera never asked any follow-up question or otherwise attempted to ferret out the contents of this "second report." Whether the report Dr. Hough possessed had minor variations, large differences, or was the same as the report Ring

provided Rivera, the record is silent.  Because there is no basis in the record to conclude there was a second, undisclosed report, there is no basis for us to reverse. The district court did not abuse its discretion when it denied Rivera's motion for new trial.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

**AFFIRMED.**