[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-13114

_____

D.C. Docket No. 4:16-cv-00102-CDL

SABAL TRAIL TRANSMISSION, LLC,

Plaintiff-Appellee-Cross Appellant,

versus

W. LYNN LASSETER,
REAL ESTATE, 1.85 acres of land, more or less, in Colquitt County, Georgia,

Defendants-Appellants-Cross Appellees.

_____

Appeals from the United States District Court
for the Middle District of Georgia

_____

(August 5, 2020)

Before WILLIAM PRYOR, Chief Judge, ROSENBAUM, Circuit Judge, and
MOORE,* District Judge.

PER CURIAM:

_____

* Honorable K. Michael Moore, Chief United States District Judge for the Southern
District of Florida, sitting by designation.

Lynn Lasseter appeals from a judgment awarding him $107,916.50 in compensation for property that Sabal Trail Transmission, LLC, acquired by eminent domain. He challenges several evidentiary rulings and argues that the district court should have dismissed this action when the District of Columbia Circuit issued an opinion vacating the certificate that gave Sabal Trail authority to maintain the action. Sabal Trail cross-appeals the denial of its motion for judgment as a matter of law in the amount of $24,096.50. *See* Fed. R. Civ. P. 50. We conclude that Lasseter's challenges are meritless and that there was no evidence to support an award above $24,096.50. We affirm the evidentiary rulings and the denial of Lasseter's motion to dismiss, and we reverse the denial of Sabal Trail's motion for judgment as a matter of law, vacate the judgment in the amount of $107,916.50, and direct the entry of judgment in the amount of $24,096.50.

## I. BACKGROUND

In February 2016, the Federal Energy Regulatory Commission issued Sabal Trail a certificate to construct and operate a natural-gas pipeline. *See* 15 U.S.C. § 717f(c). The following month, Sabal Trail filed this action to condemn easements on Lasseter's land needed to build the pipeline. *See id.* § 717f(h). The district court granted Sabal Trail immediate possession of the land so that it could begin building the pipeline.

In the meantime, environmental groups and landowners petitioned the

2

District of Columbia Circuit for review of the order granting Sabal Trail the certificate. *Sierra Club v. Fed. Energy Reg. Comm'n*, 867 F.3d 1357, 1365 (D.C. Cir. 2017). In August 2017, that court issued an opinion that granted the petition, vacated the certificate, and remanded the action to the Commission for the preparation of a new environmental impact statement. *Id.* at 1379. At the request of the Commission, the court later stayed the issuance of its mandate to allow the Commission to issue a new certificate to Sabal Trail after preparing additional environmental impact statements. The Commission explained that a stay of the mandate was necessary to avoid "a lapse in Commission-issued certificate authority" for pipeline companies that could "effectively cease the operation of needed natural gas pipelines."

After the District of Columbia Circuit released its opinion but before the mandate issued, Lasseter moved to dismiss this action on the ground that Sabal Trail lacked authority to maintain it without a certificate. The district court deferred ruling on the motion until the District of Columbia Circuit issued its mandate. While issuance of the mandate was stayed, the Commission prepared additional environmental impact statements regarding the pipeline project and entered an order reinstating Sabal Trail's certificate. About two weeks later, the District of Columbia Circuit issued its mandate. After the mandate issued, the district court denied the motion to dismiss. It ruled that Sabal Trail never lacked

3

authority to maintain this action because the Commission entered an order reinstating the certificate before the mandate issued.

Before trial, Lasseter disclosed Jeanne Easom, a professional appraiser, as his expert witness. In her expert report, Easom appraised part of the property using the comparable-sales method and part using the subdivision method. She used the subdivision method based on Lasseter's stated intention to develop part of the property into a residential subdivision. Relying on plans that Lasseter gave her, Easom opined that the subdivision would contain 12 lots and that this portion of the property was worth considerably more than the remainder of the property.

The district court granted Sabal Trail's motion to exclude the subdivision portion of Easom's valuation. It ruled that Lasseter failed to establish that a subdivision development was reasonably probable or financially feasible, as Georgia law requires to value land using that method. After excluding the subdivision portion of the report, the district court *sua sponte* allowed Lasseter to amend the expert report before trial. Lasseter declined that opportunity and proceeded to trial without an expert witness.

The district court also granted Sabal Trail's motion to exclude any testimony by Lasseter regarding his subjective fears about pipeline dangers. It accepted that evidence about how fear in the marketplace affects property values was admissible, but it ruled that "a witness cannot use his own personal fear as a basis for testifying

4

about fear in the marketplace." It excluded any testimony by Lasseter regarding his "subjective fears about the pipeline."

During discovery, Sabal Trail sent an interrogatory to Lasseter that asked him to disclose any lay or expert witnesses who would offer opinion testimony at trial about the value of his property, the compensation he was due, or other matters involving opinions. Lasseter responded that he had not yet identified any opinion witnesses but that he reserved the right to supplement his response after he had done so. As trial approached, Sabal Trail moved to compel supplemental responses to its interrogatories. The district court denied the motion as moot on the ground that some of the information Sabal Trail sought might be produced in Lasseter's forthcoming expert disclosure. Lasseter later disclosed Easom's expert report, but he never identified himself as an opinion witness. By agreement, Sabal Trail noticed Lasseter's deposition after the discovery cut-off. Lasseter failed to appear.

Not until after trial commenced did Lasseter express his intent to offer opinion testimony on land value and compensation. Sabal Trail objected on the ground that Lasseter was never disclosed as an opinion witness. The district court reluctantly agreed and ruled that Lasseter could testify but could not offer opinion testimony about land values or compensation.

Sabal Trail presented the testimony of two expert witnesses. Carl Schultz, a land appraiser, testified based on comparable land sales that Lasseter's property

5

was worth $15,500 per acre before the taking, for a total value of $1,164,050. He valued the property after the taking at $1,144,071, for a difference of $19,979. Because he concluded that the easements caused no loss in value to the remainder of the property, Schultz opined that just compensation for the easement interests was $19,979. Sabal Trail also called Craig Ganas, a timber appraiser, who testified that the value of merchantable timber removed from the easements totaled $4,117.50. Based on this evidence, Sabal Trail asked for an award of $24,096.50 in compensation to Lasseter.

Lasseter testified as the only defense witness. He testified about how he came to own the land, what he did for a living, his heart attack and later recovery, his hip replacements, and the aesthetic value of the wetlands on his property. He also testified that Sabal Trail had removed oak trees from a part of his property on which he envisioned developing residential lots at some future time. But consistent with the ruling of the district court, Lasseter did not offer any opinion testimony about the value of his land or timber.

Following the close of evidence, Sabal Trail moved for judgment as a matter of law, Fed. R. Civ. P. 50(a). It argued that the uncontroverted expert testimony about the value of the easement interests and the timber established that just compensation for the taking was $24,096.50. It sought judgment as a matter of law in that amount.

6

The district court deferred ruling on the motion and submitted the case to the jury. The jury returned a verdict of $103,385 in compensation for the easement interests and $4,531.50 in compensation for the timber. Following trial, Sabal Trail renewed its motion for judgment as a matter of law, Fed. R. Civ. P. 50(b), and again argued that the uncontroverted evidence established that just compensation for the easements and timber was $24,096.50.

The district court denied the renewed motion for judgment as a matter of law. It acknowledged that Lasseter had presented no valuation evidence to contradict the expert testimony. But it reasoned that the jury could have reasonably inferred a loss in value to the remaining land from other evidence presented at trial. It pointed to the terms of the easement, which restricted Lasseter's ability to use the easement for certain purposes, and to Lasseter's testimony that he planned to one day develop property near the easement for residential purposes. The district court ruled that a reasonable jury could have found that about six acres of property near the pipeline was no longer developable for residential purposes. And based on that finding, the jury could have reached its verdict using the per-acre value of $15,500 given by Sabal Trail's expert. The district court also concluded that the jury award for Lasseter's timber was supported by the evidence, notwithstanding that it was $414 more than the expert testimony supported.

7

## II. STANDARDS OF REVIEW

Two standards govern our review. We review *de novo* questions of law, *United States v. Campbell*, 743 F.3d 802, 805 (11th Cir. 2014), and the denial of a motion for judgment as a matter of law, *Skye v. Maersk Line Corp.*, 751 F.3d 1262, 1265 (11th Cir. 2014). We review for abuse of discretion the decision to exclude expert testimony, *Guinn v. AstraZeneca Pharm. LP*, 602 F.3d 1245, 1252 (11th Cir. 2010), the decision to exclude "late-disclosed witness testimony," *Romero v. Drummond Co.*, 552 F.3d 1303, 1313–14 (11th Cir. 2008), and other evidentiary rulings, *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 919 (11th Cir. 2018).

## III. DISCUSSION

The parties raise three main arguments on appeal. First, Lasseter argues the district court should have dismissed this action when the District of Columbia Circuit issued its opinion in *Sierra Club*, 867 F.3d 1357. Next, Lasseter challenges the evidentiary rulings that excluded the subdivision valuation, his opinion testimony, and evidence of pipeline fears. Finally, Sabal Trail argues on cross-appeal that it is entitled to judgment as a matter of law in the amount of $24,096.50. We reject Lasseter's arguments and agree with Sabal Trail that it is entitled to judgment as a matter of law.

The district court correctly denied Lasseter's motion to dismiss. The Natural Gas Act confers the federal power of eminent domain upon "any holder of a

8

certificate of public convenience and necessity." 15 U.S.C. § 717f(h). Lasseter argues that upon release of the opinion in *Sierra Club* Sabal Trail no longer held a certificate and so lacked authority to maintain this action. But this argument ignores fundamental principles of federal appellate practice: "Until the mandate issues, an appellate judgment is not final; the decision reached in the opinion may be revised by the panel, or reconsidered by the en banc court, or certiorari may be granted by the Supreme Court." *Flagship Marine Servs., Inc. v. Belcher Towing Co.*, 23 F.3d 341, 342 (11th Cir. 1994); *see also Ethyl Corp. v. EPA*, 51 F.3d 1053, 1057 & n.5 (D.C. Cir. 1995). For this reason, the opinion in *Sierra Club* did not render Sabal Trail's certificate legally inoperative. Only after the mandate issued was the certificate formally vacated. And because the Commission issued Sabal Trail a reinstated certificate before the mandate issued, Sabal Trail never lacked authority to maintain this action.

Lasseter next challenges the exclusion of the subdivision valuation. Under Georgia law, which the parties agree governs, there must be a "reasonable probability" that land could be used as a subdivision before valuing the land based on the prospect of subdividing it. *State Highway Dep't v. Thomas*, 128 S.E.2d 520, 522 (Ga. Ct. App. 1962). "[T]he mere possibility of such use is not sufficient to authorize the jury to consider subdivision use in determining the value." *Id.*; *cf. Ga. Transmission Corp. v. Barron*, 566 S.E.2d 363, 365 (Ga. Ct. App. 2002)

9

(excluding valuation based on prospective commercial development because it was "pure speculation that [the] property would be rezoned to a commercial use"). We agree with the district court that Lasseter failed to establish a reasonable probability of subdivision.

The only evidence of a future subdivision that Lasseter offered was an undated, incomplete plat for a proposed 12-lot subdivision that he provided to Easom. Easom admitted she had no knowledge that the subdivision plat had been recorded or approved by Colquitt County. She conceded that all she received from Lasseter was "a drawing prepared by a surveyor with a conceptual depiction of what a subdivision might look like on the property." Because Lasseter offered no other evidence to establish a reasonable probability that his land could be used for a subdivision, the district court did not err in excluding this evidence.

Lasseter next challenges the ruling that he could not offer opinion testimony on land value or compensation because he was never disclosed as an opinion witness. We consider three factors to determine whether the exclusion of a late-disclosed witness was an abuse of discretion: (1) "the explanation for the failure to disclose the witness," (2) "the importance of the testimony," and (3) "the prejudice to the opposing party if the witness had been allowed to testify." *Romero*, 552 F.3d at 1321 (alteration adopted) (internal quotation marks omitted). Considered together, the first and third factors may outweigh the second. *Id.*; *see also Bearint*

10

*ex rel. Bearint v. Dorell Juvenile Grp.*, 389 F.3d 1339, 1353 (11th Cir. 2004) ("Regardless of the importance of [the] testimony, the reasons for the delay in the . . . disclosure and the consequent prejudice that his testimony would have caused [the opposing party] require us to affirm the district court's ruling.").

Lasseter offered no reason for failing to disclose himself as an opinion witness when Sabal Trail first asked him to identify all opinion witnesses or when Sabal Trail moved to compel supplemental answers to its interrogatory. He also failed to appear for his deposition. And Sabal Trail would have been prejudiced by being unable to prepare for Lasseter's opinion testimony or understand the basis of his opinions in advance of trial. The district court did not abuse its discretion by forbidding Lasseter to offer opinion testimony at trial.

Lasseter next argues that the district court excluded evidence of "a public perception of fear regarding the pipeline's potential dangers through objective evidence," but the district court never made such a ruling. It instead ruled that Lasseter could not testify regarding his "subjective fears about the pipeline." The district court did not abuse its discretion in excluding this testimony, which had minimal probative value and a high risk of prejudice. *See* Fed. R. Evid. 403.

Finally, Sabal Trail contends in its cross-appeal that it was entitled to judgment as a matter of law in the amount of $24,096.50. A party is entitled to judgment as a matter of law if "a reasonable jury would not have a legally

11

sufficient evidentiary basis to find for the [nonmoving party]." Fed. R. Civ. P. 50(a). "In deciding a motion for judgment as a matter of law, we review all the evidence, drawing all reasonable inferences in favor of the nonmoving party." *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713, 724 (11th Cir. 2012). "We do not make credibility determinations or weigh the evidence." *Id.*

We agree with Sabal Trail. The testimony at trial regarding compensation was uncontradicted. Schultz testified that the fair market value of the easement interests Sabal Trail acquired was $19,979 and that the easements did not diminish the value of the remaining land at all. Ganas testified that the value of the merchantable timber Sabal Trail removed from the land was $4,117.50. And Lasseter offered no contrary valuation evidence or evidence of loss in value to the remainder. Yet the jury still returned a verdict of $103,385 for the easement interests and $4,531.50 for the timber, more than any evidence in the record supported. Because the jury did not have a legally sufficient evidentiary basis to return an award above $24,096.50, we conclude that Sabal Trail was entitled to judgment as a matter of law in that amount. *See U.S. ex rel. Tenn. Valley Auth. v. 1.72 Acres of Land*, 821 F.3d 742, 757 (6th Cir. 2016) ("We have little difficulty concluding that the district court correctly entered judgment as a matter of law, and the reason for this is simple—[the landowner] presented no evidence at all about the value of his property before and after the taking of the condemned portion.").

12

To be sure, Lasseter elicited on cross-examination some testimony from Sabal Trail's expert witnesses that may have undermined their valuations. But Lasseter failed to elicit or present any evidence that would support an *alternative* valuation. To arrive at an alternative valuation above what the expert testimony supported, the jury necessarily had to engage in impermissible speculation. *See Brough v. Imperial Sterling Ltd.*, 297 F.3d 1172, 1178 (11th Cir. 2002). The district court erred by failing to grant judgment as a matter of law.

## IV. CONCLUSION

We **AFFIRM** the denial of Lasseter's motion to dismiss and the evidentiary rulings against him. We **REVERSE** the denial of Sabal Trail's motion for judgment as a matter of law, **VACATE** the judgment in the amount of $107,916.50, and direct the entry of judgment in the amount of $24,096.50.

13